UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOHN DOE, individually and on behalf of himself and all others similarly situated, | * * * * | |
| Plaintiff, | * * | Civil Action No. 22-cv-12022-ADB |
| v. | * * | *Related Cases:* |
| UMASS MEMORIAL HEALTH CARE, INC., | * * * | Civil Action No. 22-cv-40154-ADB<br>Civil Action No. 23-cv-10113-ADB |
| Defendant. | * * * | |

## **MEMORANDUM AND ORDER**

BURROUGHS, D.J.

    John Doe ("Plaintiff") filed this putative class action in Massachusetts Superior Court against UMass Memorial Health Care, Inc. ("Defendant") on October 24, 2022. [ECF No. 1-1 ("Compl.")]. Plaintiff alleges that Defendant shared communications about his private medical information with Facebook without Plaintiff's knowledge or consent, and raises a claim under the Massachusetts Wiretap Act, Mass. Gen. Laws ch. 272, § 99, as well as claims for invasion of privacy, Mass. Gen. Laws ch. 214, § 1B, breach of fiduciary duty of confidentiality, breach of express contract, breach of implied contract, and unjust enrichment. [Id. ¶¶ 162–244].

    Defendant removed the case to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). [ECF No. 1 ("Notice of Removal")]. Presently before the Court is Plaintiff's motion to remand back to state court pursuant to 28 U.S.C. § 1447. [ECF No. 13]. Two related putative class actions were filed against Defendant, also in Massachusetts Superior Court, which Defendant also removed to this Court pursuant to 28 U.S.C. § 1442(a)(1). See

[Colleton v. UMass Mem'l Health Care, Inc., No. 22-cv-40154 (D. Mass.) ("Colleton Action"); Colleton Action, ECF No. 1 ("Colleton Notice of Removal"); Colleton Action, ECF No. 1-1 ("Colleton Compl."); Progin v. UMass Mem'l Health Care, Inc., No. 23-cv-10113 (D. Mass.) ("Progin Action"); Progin Action, ECF No. 1 ("Progin Notice of Removal"); Progin Action, ECF No. 1-3 ("Progin Compl.")].

Plaintiffs in the other actions also filed motions to remand. [Colleton Action, ECF No. 13; Progin Action, ECF No. 14]. Defendant filed an omnibus response to the three motions to remand, [ECF No. 31], and Plaintiffs, in turn, filed an omnibus reply in further support of their motions, [ECF No. 34].

For the reasons set forth below, Plaintiff's motion to remand, [ECF No. 9], is GRANTED.

I.   BACKGROUND[1]

Defendant is a healthcare service provider that developed, owns, and/or operates a website, www.ummhealth.org (the "Website"), which offers a wide range of healthcare services and a patient portal. [Compl. ¶¶ 16–17; Colleton Compl. ¶¶ 2, 14; Progin Compl. ¶ 19]. Plaintiff is a patient of Defendant's and a user of the Website. [Compl. ¶¶ 11, 86]. The Website collects various types of information about its users, including the type of medical treatment an individual is seeking, health conditions, diagnoses, and procedures. [Compl. ¶¶ 76–77]; see also [Colleton Compl. ¶ 17 (describing information Website allegedly collects, including type of medical treatment and the names of physicians with whom individuals schedule appointments);

---

[1] For purposes of this Order, the relevant facts are drawn from the three Complaints, the three Notices of Removal, and Defendant's briefing, [ECF No. 31]. Additionally, the Court takes judicial notice of various public documents relating to the Meaningful Use Program, further discussed infra. See Giragosian v. Ryan, 547 F.3d 59, 66 (1st Cir. 2008).

Progin Compl. ¶ 46 (describing information Website allegedly collects, including individuals' medical conditions and the doctors they may be seeing)]. The Website uses a code analytics tool called "Facebook Pixel,"[2] [Compl. ¶ 76; Colleton Compl. ¶ 24; Progin Compl. ¶ 60], which tracks the actions of Website users and sends users' Website communications to Facebook, [Compl. ¶ 77; Colleton Compl. ¶ 27; Progin Compl. ¶¶ 70–74]. Website users like Plaintiff did not know of or consent to the sharing of their communications to a third-party. [Compl. ¶¶ 88, 90; Colleton Compl. ¶¶ 40, 45; Progin Compl. ¶ 32].

In its Notice of Removal, Defendant asserts that it optimizes and increases traffic to its Website in compliance with the Meaningful Use Program[3] ("Meaningful Use Program" or "Program"). [Notice of Removal ¶ 26; Colleton Notice of Removal ¶ 26; Progin Notice of Removal ¶ 28]. The Meaningful Use Program implements provisions of the American Recovery and Reinvestment Act of 2009. Medicare and Medicaid Programs; Elec. Health Rec. Incentive Program, 75 Fed. Reg. 144, 44,314 (July 28, 2010). The Program was established in 2010 by the Department of Health and Human Services ("HHS") to promote the use of certified electronic health record technology in a meaningful way as "one piece of a broader [health IT] infrastructure needed to reform the health care system and improve health care quality, efficiency, and patient safety." [ECF No. 31 at 10 (quoting Medicare and Medicaid Programs; Elec. Health Rec. Incentive Program, 75 Fed. Reg. at 44,321)].

Also in the American Recovery and Reinvestment Act of 2009, Congress established the Office of the National Coordinator ("ONC") within HHS, and charged the ONC with various

---

[2] Facebook Pixel is now called Meta Pixel.

[3] Although the Meaningful Use Program was renamed the Promoting Interoperability Program in 2018, the parties all use the Program's original name. For consistency, the Court does the same.

obligations, including to "update the Federal Health IT Strategic Plan (developed as of June 3, 2008) to include specific objectives, milestones, and metrics" with respect to each of the following: "(i) [t]he electronic exchange and use of health information and the enterprise integration of such information," as well as "(vii) [s]trategies to enhance the use of health information technology in improving the quality of health care." 42 U.S.C. § 300jj-11(c)(3)(A). The ONC provides guidance for complying with the Program, including a model website that uses third-party marketers such as Facebook and Google. [Notice of Removal ¶¶ 20–21; Colleton Notice of Removal ¶¶ 20–21; Progin Notice of Removal ¶¶ 22–23]. The Program provides for incentive payments of up to two percent for providers who reach certain levels of engagement with electronic health record use through providers' patient portals. [Notice of Removal ¶ 18; Colleton Notice of Removal ¶ 18; Progin Notice of Removal ¶ 20]. In the future, these payments will phase out and transition into penalties for providers that do not comply. [ECF No. 31 at 10]. Defendant submits reports to the Center for Medicare and Medicaid Services ("CMS") on its involvement in the Program, specifically related to the patient portal and patients' use of the portal. [Id. at 12].

Defendant asserts that in maintaining the Website, it is acting under the authority of the federal government. [Notice of Removal ¶¶ 26–31; Colleton Notice of Removal ¶¶ 26–31; Progin Notice of Removal ¶¶ 28–33]. Specifically, Defendant claims that through the Meaningful Use program the federal government "incentiviz[es], regulat[es], monitor[s], and supervis[es]" Defendant's use and promotion of its Website "in order to meet the federal

4

government's national priority of interoperable health information technology." [Notice of Removal ¶ 26; Colleton Notice of Removal ¶ 26; Progin Notice of Removal ¶ 28].

## II.   LEGAL STANDARD

Federal courts are courts of limited jurisdiction, "possess[ing] only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). If the Court lacks subject-matter jurisdiction over a removed action, the action must be remanded to state court. 28 U.S.C. § 1447(c).

As pertinent here, a case filed in state court may be removed to federal court pursuant to 28 U.S.C. § 1442(a)(1), which confers jurisdiction to federal courts over actions against the "United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." As the Supreme Court has explained:

> Historically, removal under § 1442(a)(1) and its predecessor statutes was meant to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties. The act of removal permits a trial upon the merits of the state-law question free from local interests or prejudice.

Arizona v. Manypenny, 451 U.S. 232, 241–42 (1981) (citations omitted).

Under § 1442(a)(1), Defendant bears the burden of establishing that (1) it is "acting under" the authority of a federal officer; (2) the charged conduct was carried out "for or relating to" the asserted official authority; and (3) Defendant has a "colorable federal defense." Moore v. Elec. Boat Corp., 25 F.4th 30, 34 (1st Cir. 2022).

Generally, "[b]ecause removal to federal court deprives the state court of jurisdiction, 'removal statutes are to be narrowly construed.'" Massachusetts v. Libertad, No. 22-cv-10131, 2022 WL 479799, at *1 (D. Mass. Feb. 16, 2022) (quoting Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 76 (1st Cir. 2009)). Conversely, the Supreme Court held that the "acting under" the

authority of a federal officer language in § 1442(a)(1) should be "liberally construed," while also cautioning that this "broad language is not limitless." Watson v. Philip Morris Cos., 551 U.S. 142, 147 (2007) (quoting Colorado v. Symes, 286 U.S. 510, 517 (1932)).

### III. DISCUSSION

Plaintiff argues that the Court must remand this case back to state court because Defendant has failed to show that the Court has subject-matter jurisdiction pursuant to the federal officer removal statute. [ECF No. 10]. While Plaintiff concedes that Defendant is a "person" under the statute, Plaintiff contends that Defendant (1) was not "acting under" any federal authority with regard to the charged conduct and (2) that its conduct was not "related to" a federal office. [Id. at 11, 22]. Defendant asserts that each of these elements is satisfied and that this Court therefore has subject-matter jurisdiction. [ECF Nos. 1, 31].

"'Acting under' [the authority or direction of a federal officer] connotes 'subjection, guidance, or control' and involves 'an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" Rhode Island v. Shell Oil Prod. Co., 979 F.3d 50, 59 (1st Cir. 2020) (quoting Watson, 551 U.S. at 152), summarily vacated on other grounds, 141 S. Ct. 2666 (2021) (Mem.). Such help or assistance "does not include simply complying with the law." Watson, 551 U.S. at 152 (emphasis omitted) (noting that taxpayers who fill out complex tax forms or airline passengers who obey federal regulations may be assisting federal authorities but would not fall within the scope of the statute). A private firm's compliance with federal regulations does not alone constitute "acting under" a federal authority, even if the firm's activities are "highly supervised and monitored." Id. at 153 (noting that, if the rule were otherwise, the scope of the statute would be expanded considerably to include, potentially, "state-court actions filed against private firms in many highly regulated industries"); see also Mennonite Gen. Hosp., Inc.

6

v. Molina Healthcare of P.R., 319 F. Supp. 3d 587, 595 (D.P.R. 2018) (finding that "Defendants have not established that they were in any way acting under the direction of a federal superior" because although "Defendants are certainly subject to detailed federal regulations and . . . may even be 'highly supervised and monitored[,]' . . . Defendants have not shown anything to indicate that they 'assist, or . . . help carry out, the duties or tasks of the federal superior' with respect to the Medicaid program." (emphasis omitted) (quoting Watson, 551 U.S. at 153)).

Delegated duties do fall under the statute, but "neither Congress nor federal agencies normally delegate legal authority to private entities without saying that they are doing so." Watson, 551 U.S. at 157.  As relevant here, government contractors may be found to be "acting under" federal officers' authority when contractors go "beyond simple compliance with the law and help[] officers fulfill other basic government tasks," id. at 153, such as producing items that the government needs, like products used to fight a war, id. at 153–54 (citing Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387 (5th Cir. 1998), holding modified by Latiolais v. Huntington Ingalls, Inc., 951 F.3d 286 (5th Cir. 2020)).  These tasks are obligations that "the [g]overnment itself would have had to perform" if the contractors did not.  Id. at 154.  As in, if the government did not contract for items used in a war effort, it would be required to make those items itself.  In contrast, "receiving incentive payments for acting in a way that promotes a broad federal interest—in an area outside the traditional responsibility of the federal government—is not the same as being contracted to carry out, or assist with, a basic governmental duty."  Quinto v. Regents of Univ. of Cal., No. 22-cv-04429, 2023 WL 1448050, at *2 (N.D. Cal. Feb. 1, 2023).

Defendant asserts that it is assisting the federal government in its goal of building a nationwide electronic health records system.  [ECF No. 31 at 14].  Defendant further contends

7

that the federal government has delegated duties to it in line with a contractor relationship. [Id. at 22]. In support of these contentions, Defendant points to the fact that it receives incentive payments, makes efforts to increase the use of the patient portal and Website, and reports user metrics to CMS, all in furtherance of its compliance with the Meaningful Use Program. [Id. at 15–16 (citing Doe I v. UPMC, No. 20-cv-00359, 2020 WL 4381675 (W.D. Pa. July 31, 2020))]. The Court disagrees.

To begin, the fact that the federal government provides incentive payments to Defendant for its participation in the Program does not create a contractor relationship in and of itself. If that were the case, "the federal officer removal statute would sweep into the federal courts" countless cases involving private entities' receipt of incentive payments or incorporation of practices "consistent with a policy promoted by the federal government as socially desirable." Doe v. Cape Cod Healthcare, Inc., No. 23-cv-10080, ECF No. 10 (D. Mass. Jan. 25, 2023). Moreover, the fact that incentive payments will, in the future, shift to penalty payments if a provider fails to comply with the Meaningful Use Program further suggests that this is a regulation rather than a government contract.

Defendant does not produce a product that the government needs, nor is it otherwise fulfilling a basic government task. Although the ONC has an obligation to "develop, maintain, and direct the implementation of a strategic plan to guide the nationwide implementation of interoperable health information technology," [ECF No. 31 at 8], participation in the Meaningful Use Program serves broad federal goals, not basic government functions, see Doe v. Hoag Mem'l Presbyterian Hosp., No. 23-cv-00444, 2023 WL 3197716, at *3 (C.D. Cal. May 2, 2023); Crouch v. Saint Agnes Med. Ctr., No. 22-cv-01527, 2023 WL 3007408, at *5 (E.D. Cal. Apr. 19, 2023); Quinto, 2023 WL 1448050, at *2. The federal government does not have an obligation to

8

create a health information infrastructure and, if hospital systems like Defendant chose not to maintain patient portals, like the Website, the government would not be required to create its own.  See Watson, 551 U.S. at 154; Doe, I v. BJC Health Sys., No. 22-cv-00919, 2023 WL 369427, at *4 (E.D. Mo. Jan. 10, 2023).

Additionally, although Defendant submits reports to CMS and relied on guidance from the ONC in creating the Website, Defendant has not shown that the federal government exercised the type of tight control that would bring Defendant's conduct within the scope of the statute.  Cf. Moore, 25 F.4th at 35–36 (finding that a contractor was "acting under" a federal authority in building a submarine because "[t]he Navy oversaw every aspect of the design, construction, maintenance, and modernization of the submarine").  Further, the Court finds there has been no formal delegation of any of the federal government's duties to Defendant.  Compare Watson, 551 U.S. at 156 (finding that the FTC's provision of testing specifications, inspection and supervision of the testing laboratories, and prohibition of statements in advertising were merely regulations that did not constitute formal delegation), with Camacho v. Autoridad de Telefonos de P.R., 868 F.2d 482, 486 (1st Cir. 1989) (finding that defendants were acting under the authority of the federal government because they "were acting under express orders, control and directions of federal officers" when wiretapping).

In sum, although Defendant's conduct may assist the federal government in achieving a broad goal, the Court finds that its participation in the Meaningful Use Program is merely compliance with federal law and is not sufficient to bring it within the scope of the federal officer statute.  See Watson, 551 U.S. at 153.  The Court recognizes, as Defendant points out, that some courts have found removal appropriate in similar Meaningful Use Program cases.  See generally UPMC, 2020 WL 4381675; Doe v. ProMedica Health Sys., Inc., No. 20-cv-01581,